T.C. Summary Opinion 2005-163

UNITED STATES TAX COURT

DON EVAN AND VICKY KAY WHITINGER, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8529-04S.            Filed November 8, 2005.

Don Evan and Vicky Kay Whitinger, pro sese.

<u>Catherine Campbell</u>, for respondent.

CARLUZZO, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of sections 6330(d) and 7463 of the Internal
Revenue Code of 1986, as amended, in effect at the time the
petition was filed.[1]  The decision to be entered is not

_____

    [1] Unless otherwise indicated, subsequent section references
are to the Internal Revenue Code of 1986, as amended, in effect
for the relevant period.

reviewable by any other court, and this opinion should not be cited as authority.

On April 29, 2004, respondent issued to petitioners a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 for unpaid 1999 Federal income tax and related liabilities. The issue for decision is whether respondent may proceed with the collection activity proposed in that notice.

Background

Some of the facts have been stipulated and are so found. At the time the petition was filed, petitioners resided in Lewiston, Idaho.

As filed and relevant here, petitioners' joint 1999 Federal income tax return shows: (1) Adjusted gross income of $129,805, which amount includes an $82,490 taxable distribution from an individual retirement account; (2) a total tax liability of $34,650; (3) withholding credits of $21,261; and (4) a tax due of $13,794,[2] which was not paid with, or following, the filing of petitioners' 1999 return. On May 29, 2000, respondent assessed the tax reported on that return.

On September 12, 2001, respondent issued to petitioners a notice of deficiency in which a $363 deficiency in their 1999

---

[2] This amount includes a $408 estimated tax penalty also reported on the return.

income tax was determined.[3]  Petitioners timely petitioned this Court in response to that notice, and in due course, respondent assigned the case to Appeals Officer Jeffery L. Sherrill (Mr. Sherrill) for settlement purposes.

On August 1, 2003, after reaching a proposed settlement with Mr. Sherrill as to the 1999 deficiency, petitioners received a letter from respondent's Appeals Office that stated the proposed settlement was "reflected in the [attached] stipulated-decision document" that ultimately would be submitted to the Court.  The letter also stated that "If there is an amount due as a result of this settlement, it would be to your advantage to pay the full amount now."  The letter contains no reference to petitioners' then-outstanding 1999 tax liability that had been previously assessed based upon the amount of tax reported on their 1999 return.  On August 20, 2003, a stipulated decision reflecting a $363 deficiency in petitioners' 1999 Federal income tax was entered in petitioners' deficiency case.

Following the entry of decision by the Court, petitioners remitted a payment of $363 to respondent with respect to the 1999 deficiency.  According to petitioners, Mr. Sherrill led them to believe that their 1999 tax liability would be fully satisfied by this payment.

---

[3]  The deficiency resulted from petitioners' failure to report certain gambling income.

A Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing, was sent to each petitioner by respondent on September 13, 2003, with respect to their unpaid 1999 tax and related liabilities. After receiving the letter, Mr. Whitinger contacted Mr. Sherrill and stated that petitioners had been led to believe that the $363 payment "would take care of all that we owe the IRS." Mr. Sherrill informed Mr. Whitinger that the $363 payment did not settle the unpaid tax reported on petitioners' 1999 return.

On or about October 6, 2003, respondent received a Form 12153, Request for a Collection Due Process Hearing, signed by both petitioners. Petitioners again stated in their request that their 1999 tax liability had been fully settled by the $363 payment. In addition, petitioners requested an "in person hearing."

On January 13, 2004, respondent's San Jose Appeals Office sent a letter to petitioners informing them about Appeals Office review. The letter stated that the Appeals Office conducts reviews by telephone, mail, and/or personal interviews and that petitioners would be contacted by the Appeals Office "as quickly as possible".

Appeals Officer Colleen Cahill (Ms. Cahill) was assigned to review petitioners' case. Ms. Cahill reviewed the administrative

file and determined that all of the applicable requirements of law and administrative procedure had been met. Ms. Cahill was aware that petitioners had received a notice of deficiency for 1999 and ultimately that a decision for that year had been entered by the Court.

On January 26, 2004, Ms. Cahill received from petitioners a copy of respondent's January 13, 2004, letter with handwritten remarks by Mr. Whitinger. Specifically, Mr. Whitinger stated that petitioners had paid $363 which is "what the Court has ordered for taxable year 1999" and that petitioners "do not owe any more for taxable year 1999."

On January 30, 2004, Ms. Cahill held a telephone hearing with Mr. Whitinger. Mr. Whitinger asserted that the $363 payment made by petitioners was a full settlement of their 1999 liability. Specifically, Mr. Whitinger claimed that petitioners were informed by Mr. Sherrill that their $363 payment was in full satisfaction of their 1999 tax liability. Petitioners offered no substantiation other than Mr. Whitinger's own statement to support their contention. During the telephone hearing, Ms. Cahill informed Mr. Whitinger that their $363 payment was for their 1999 deficiency and that the taxes reported as due on petitioners' 1999 return remained unpaid. Ms. Cahill suggested

to Mr. Whitinger that petitioners file an offer-in-compromise with respect to their 1999 tax liability.[4]

On January 30, 2004, Ms. Cahill sent petitioners the necessary offer-in-compromise forms, including Form 656, Application for Offer in Compromise, and Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, to be completed and returned to respondent. Subsequently, Ms. Cahill received from petitioners a completed Form 656. However, petitioners did not include Form 433-A or the appropriate filing fee. Ms. Cahill informed petitioners that both Form 433-A and the filing fee must be submitted before respondent could process their offer-in-compromise. At no time did petitioners submit to respondent Form 433-A or the filing fee.

Ms. Cahill reviewed respondent's administrative record but could not verify petitioners' claim that they were informed by Mr. Sherrill that their $363 payment made with respect to the 1999 deficiency was a full settlement of their 1999 tax liability. Ms. Cahill again spoke with Mr. Whitinger to inform petitioners as to their available options and to advise them that the amount of tax due as reported on petitioners' 1999 return remained unpaid.

---

[4] Petitioners had previously submitted an offer-in-compromise prior to receiving the notice of deficiency. This offer-in-compromise was rejected by respondent on Mar. 7, 2001.

On April 29, 2004, respondent sent to petitioners a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 for the 1999 taxable year. In the notice, respondent determined that all applicable laws and administrative procedures had been satisfied and that petitioners had proposed an offer-in-compromise but failed to provide any financial information or documentation and to pay the filing fee. Respondent also determined that petitioners had paid the $363 deficiency for 1999, but that the original tax due of $13,389 as reported on their 1999 return remained unpaid. Concluding that the proposed levy represented an appropriate balancing of the need for efficient collection with the concern that the collection action be no more intrusive than necessary, respondent determined that the proposed levy could proceed.

On May 24, 2004, petitioners submitted a timely petition to this Court for review of the determination.

Discussion

A. Petitioners' Contentions

In their petition, petitioners contend that respondent's representatives were "dishonest" and that petitioners would suffer economic hardship if they were required to pay the amount due as reported on their 1999 return. Petitioners argue that their payment of the amount due in the notice of deficiency for 1999 was a full settlement of their 1999 tax liability.

Petitioners also now attack the validity of respondent's determination because they were not given an "in person" hearing as requested in their Form 12153.

B.  Sections 6330 and 6331

Section 6331(a) provides that if any person liable to pay any tax neglects or refuses to pay such tax within 10 days after notice and demand for payment, then the Secretary is authorized to collect such tax by levy upon the person's property.  Section 6331(d) provides that, at least 30 days before enforcing collection by way of a levy on the person's property, the Secretary is obliged to provide the person with a final notice of intent to levy, including notice of the administrative appeals available to the person.

Section 6330 generally provides that the Commissioner cannot proceed with collection by levy until the person has been given notice and the opportunity for an administrative review of the matter (in the form of an Appeals Office hearing) and, if dissatisfied, with judicial review of the administrative determination.  See Davis v. Commissioner, 115 T.C. 35, 37 (2000); Goza v. Commissioner, 114 T.C. 176, 179 (2000).

If a section 6330 hearing is requested, the hearing is to be conducted by respondent's Appeals Office, and, at the hearing, the Appeals officer conducting it must verify that the requirements of any applicable law or administrative procedure

have been met.  Sec. 6330(b)(1), (c)(1).  Section 6330(c) prescribes the matters that a taxpayer may raise at an Appeals Office hearing.  Section 6330(c)(2)(A) provides that a taxpayer may raise at the hearing "any relevant issue relating to the unpaid tax or proposed levy", including spousal defenses and collection alternatives.  Additionally, the taxpayer may challenge the existence or amount of the underlying tax liability if the taxpayer "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability."  Sec. 6330(c)(2)(B).

At the conclusion of the hearing, the Appeals officer must determine whether and how to proceed with collection, taking into account, among other things, collection alternatives proposed by the taxpayer and whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that the collection action be no more intrusive than necessary.  See sec. 6330(c)(3).

Section 6330(d)(1) provides that if the Appeals Office issues a notice of determination to the taxpayer following a section 6330 hearing regarding a levy action, then the taxpayer will have 30 days following the issuance of such determination letter to file a petition for review with this Court or a Federal District Court, as may be appropriate.  See Offiler v. Commissioner, 114 T.C. 492, 498 (2000).

We have jurisdiction to review the Appeals officer's determination if we have jurisdiction over the type of tax involved in the case. Sec. 6330(d)(1)(A); see Iannone v. Commissioner, 122 T.C. 287, 290 (2004). If the underlying tax liability is properly at issue, we review the determination de novo. Goza v. Commissioner, supra at 181-182. If the underlying tax liability is not at issue, we review the determination for abuse of discretion. Id. at 182. In reviewing for an abuse of discretion under section 6330(d)(1), generally we consider only arguments, issues, and other matters that were raised at the section 6330 hearing or otherwise brought to the attention of the Appeals officer. Magana v. Commissioner, 118 T.C. 488, 493 (2002); see also sec. 301.6330-1(f)(2), Q&A-F5, Proced. & Admin. Regs. Whether an abuse of discretion has occurred depends upon whether the exercise of discretion is without sound basis in fact or law. See Ansley-Sheppard-Burgess Co. v. Commissioner, 104 T.C. 367, 371 (1995).

C. Standard of Review

Section 6330(c)(2)(B) provides that a person may challenge "the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." We have held that "it is reasonable to interpret the term 'underlying tax

liability' as a reference to the amounts that the Commissioner assessed for a particular tax period." Montgomery v. Commissioner, 122 T.C. 1, 7 (2004). Thus, "'underlying tax liability' may encompass an amount assessed following the issuance of a notice of deficiency under section 6213(a), an amount 'self-assessed' under section 6201(a), or a combination of such amounts." Id. at 7-8.

The plain language of section 6330(c)(2)(B) bars a taxpayer who has received a notice of deficiency from challenging his or her underlying tax liability for that year (whether the liability was self-assessed or assessed as a deficiency) in a collection review proceeding inasmuch as the person was afforded a prior opportunity to challenge such liability under the deficiency procedures. See id. at 8. In contrast, where a person has not received a notice of deficiency and has not had a prior administrative or judicial opportunity to challenge the amounts the Commissioner assessed, section 6330(c)(2)(B) provides that such person may challenge the underlying tax liability as part of the collection review procedure. Id.

Petitioners' 1999 return shows a tax due to be paid. Petitioners made no payment with respect to that tax with or following the filing of their 1999 return. Because certain income was omitted from petitioners' 1999 return, respondent issued a notice of deficiency to them for that year. After

receiving the notice of deficiency, petitioners filed a petition in this Court. That case was concluded without trial by entry of a decision on August 20, 2003. The decision provided that there was a "deficiency in income tax due from the petitioners for the taxable year 1999 in the amount of $363.00."

At the Appeals Office hearing and at trial in this case, petitioners argued that payment of the 1999 deficiency entirely extinguished any 1999 tax liability that was otherwise then-outstanding, including the amount that resulted from the tax reported due on their 1999 return. At the time of filing their petition in their deficiency case, petitioners could have challenged the tax liability reported due on their 1999 return, but they did not.[5]

Petitioners received a notice of deficiency for 1999 and had an opportunity to dispute their underlying tax liability for that year.[6] It follows that petitioners are barred under section 6330(c)(2)(B) from challenging the existence or amount of their

---

[5] Petitioners' case is distinguishable from Montgomery v. Commissioner, 122 T.C. 1, 9 (2004), which held that sec. 6330(c)(2)(B) permits a taxpayer to challenge the existence or amount of the tax liability reported on the original return if they "have not received a notice of deficiency * * * and they have not otherwise had an opportunity to dispute the tax liability in question."

[6] In the present case, petitioners' "underlying tax liability" consists of the amount that petitioners reported due on their 1999 tax return along with statutory interest and penalties and the amount assessed following the issuance of the notice of deficiency. See Montgomery v. Commissioner, supra.

underlying tax liability for 1999 in this proceeding.  See Goza v. Commissioner, 114 T.C. at 180-181.  Because the underlying tax liability is not properly at issue, we review for abuse of discretion, respondent's determination to proceed with collection of petitioners' 1999 tax liability.  Id. at 182.  Accordingly, we must decide whether respondent exercised his discretion arbitrarily, capriciously, or without sound basis in fact or law.  Woodral v. Commissioner, 112 T.C. 19, 23 (1999); see also Fargo v. Commissioner, T.C. Memo. 2004-13.

D.  Offer-in-Compromise

During the Appeals Office hearing, Ms. Cahill informed petitioners that they could submit an offer-in-compromise as a collection alternative.  Following the hearing, Ms. Cahill provided petitioners with the necessary forms to file.  Petitioners submitted to Ms. Cahill Form 656.  However, petitioners failed to submit both Form 433-A and the filing fee.  Ms. Cahill notified petitioners that the offer-in-compromise could not be processed without these items.  At no time did petitioners submit either of these items.

The Commissioner will not process an offer-in-compromise that lacks sufficient financial information to evaluate its acceptability.  See sec. 301.7122-1(d)(2), Proced. & Admin. Regs.; see also Rodriguez v. Commissioner, T.C. Memo. 2003-153.  Petitioners failed to submit to respondent the required financial

information and the filing fee with the offer-in-compromise. Ms. Cahill notified petitioners that the offer-in-compromise was incomplete and gave them additional time to submit both of these items. After petitioners chose not to avail themselves of the opportunity to submit these items, Ms. Cahill did not process petitioners' offer-in-compromise.

We find that Ms. Cahill did not exercise her discretion with respect to petitioners' offer-in-compromise arbitrarily, capriciously, or without sound basis in fact or law.

E. Financial Hardship

In their petition, petitioners allege that payment of their 1999 tax liability would be an "extreme financial hardship", but the record in this case contains little, if any, support for that allegation. The notice of determination indicates that petitioners failed "to provide any financial information or documentation proving special circumstances." Petitioners did not supply a current Form 433-A, or other current financial information to respondent, despite several requests to do so by Ms. Cahill. Having failed to respond to respondent's requests for certain financial information, petitioners are hardly in a position to challenge respondent's determination on the basis of an alleged financial hardship. See Newstat v. Commissioner, T.C. Memo. 2004-208.

F.  Face-to-Face Hearing

At trial, petitioners raised the issue that they failed to receive an in-person Appeals Office hearing as requested in their Form 12153.  In Katz v. Commissioner, 115 T.C. 329, 337-338 (2000), we held that the oral and written communications between the taxpayer and the Appeals officer constituted a section 6330 hearing and that a face-to-face meeting is not required. Additionally, section 301.6330-1(d)(2), Q&A-D6, Proced. & Admin. Regs., provides:

> CDP hearings * * * are informal in nature and do not require the Appeals officer or employee and the taxpayer, or the taxpayer's representative, to hold a face-to-face meeting.  A CDP hearing may, but is not required to, consist of a face-to-face meeting, one or more written or oral communications between an Appeals officer or employee and the taxpayer or the taxpayer's representative, or some combination thereof. * * *

After receiving petitioners' request for a hearing, respondent sent petitioners a letter which stated that the Appeals Office review could be conducted by telephone, mail, and/or personal interviews.  Shortly thereafter, Mr. Whitinger discussed petitioners' case with Ms. Cahill via telephone. During the telephone hearing, Mr. Whitinger continued to contend that petitioners' 1999 tax liability had been satisfied by the payment of the 1999 deficiency.  Ms. Cahill and Mr. Whitinger also discussed an offer-in-compromise as a collection alternative.

We conclude that the telephone conference was the Appeals officer's attempt to accommodate petitioners, that Mr. Whitinger and the Appeals officer did in fact discuss petitioners' case over the telephone, and that the Appeals officer heard and considered all of petitioners' arguments. See Katz v. Commissioner, supra; Dorra v. Commissioner, T.C. Memo. 2004-16; see also sec. 301.6330-1(d)(2), Q&A-D6, Proced. & Admin. Regs. Accordingly, we find that the Appeals officer heard all of petitioners' arguments during the telephone hearing and that the telephone hearing qualified as a section 6330 hearing.

G. Conclusion

Respondent has satisfied all of the requirements of section 6330 and may proceed with the proposed collection action as set forth in the April 29, 2004, Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

Decision will be entered

for respondent.